*Franklin,*
*December,*
*1813.*

Farnsworth
*vs.*
Converse.

---

### ELLITHORP *vs.* DEWING.

Actual seizin is a sufficient title for a plaintiff in ejectment to recover against a stranger, that is, against a person who has without right trespassed upon the prior occupancy of the plaintiff.

A mortgagor in possession can do no act which will effect the title of the mortgagee.

THIS was an action of ejectment for 12 acres of land in the town of Sheldon. Ellithorp, the plaintiff, in the spring of the year 1793, purchased of S. B. Sheldon the North half of Lot No. 51, laid for a 200 acre.Lot in Sheldon, and .went into possession, which possession was continued down. One Phelps at the same time agreed with S. B. Sheldon for the North half of the same Lot, and went into possession, and being so in possession, agreed with the plaintiff to divide the Lot with him, by a line drawn from East to West through the centre of the Lot between the North and South lines. The dividing line was accordingly run in the same year, 1793—and so the plaintiff had always claimed and possessed until some time in the year 1807.

Phelps, after having made some improvements on the North half of the Lot, gave up his bargain with Sheldon, and, in the year 1797, Sheldon bargained the same to the defendant, who went into pos-

*Franklin,*
*December,*
*1813.*

Franklin,
December,
1813

Ellithorp
vs.
Dewing.

session, and has since occupied and improved the same, but received no deed of the same until April, 1807, when it having been discovered that said Lot No. 51 contained more than 200 acres by reason of a mistake in the original survey, it being laid 20 rods wider on the South line than on the North line, so that each half as divided in the year 1793 contained more than one hundred acres; but the South part was the largest. And sheldon conveyed to the defendant, Dewing, by metes and bounds, one half of said Lot No. 51, which included the gore of land in dispute, South of the line formerly run for a division. It did not appear that Sheldon ever held a title to the said lot.

*Van Ness* and *Marvin*, for the defendant, urged that the defendant might claim the benefit of the statute of limitations from the possession of Phelps in the year 1793, and further that as the plaintiff and defendant both derived their title from the same source, they could not question each other's title; and certainly if the defendant cannot defend on this principle, neither can the plaintiff recover on the same principle : and having shewn no title to the land in question, is not entitled to recover against the defendant.

*By the Court.* From the evidence in the case, the plaintiff, and not the defendant and those under whom he claims, has been in possession and occupancy of the land in question, from the running of the division line in the year 1793, and although both parties derive their title by purchase from Sheldon, there is yet no more privity between them, than there would have been had their several purchases been of different tracts in different parts of the state. In this case then, the defendant is not estopped from denying the plaintiff's title, as in a case where the plaintiff and defendant both derive their title from one common source—nor has the plaintiff shewn a title derived from an original source—nor is it necessary in all cases for a plaintiff in ejectment to derive *his* title from an original source, nor to shew a title by the statute of limitations. Actual seizin is sufficient to recover as well as to defend against a stranger to the title. He who is first seized may recover or defend against any one except him who has a paramount title. If disseized by a stranger, he may maintain an action of ejectment against the disseizor, and in like manner the disseizor may maintain an action

against all persons except his disseizee or some one having a paramount title.

*Franklin,*
December,
1813.

Ellithorp
*vs.*
Dewing.

It further appeared that on the 21st day of July, 1807, the plaintiff had sold the South half of said Lot No. 51 as he had claimed it, to Silas Whitney, and had taken a mortgage back to secure the payment to be made on the first day of July, 1808.—That Whitney went into possession, and having failed of making payment on the 16th day of August, 1808, he released the mortgaged premises, and surrendered the possession to the plaintiff.—That in the summer of the year 1807, Whitney, while in possession, had by agreement with the defendant, yielded to him the land in dispute, and permitted the fence to be removed accordingly.

It was insisted by the counsel for the defendant, that Whitney, having while in posseesion, although a mortgagor, surrendered the premises in dispute to the defendant, it must be considered as an amicable settlement of the boundaries which was binding on the plaintiff. And further, that the deed of release from Whitney to the plaintiff, having been made while the defendant was in possession of the premises, claiming adverse both to Whitney and the plaintiff, was void, being within the act of October, 1807, to prevent fraudulent speculations and sales of choses in action.

*By the Court.* A mortgagor cannot effectually surrender or pass any right of the mortgagee in the premises. A release of the equity of redemption to the mortgagee in whom is the legal title is not within the act referred to. Beside, it is not necessary to shew the release. The condition of the mortgage having been broken, the plaintiff's claim is not founded on the release, but on the original mortgage deed which was made previous to the defendant's possession. The release is of an equitable right only—it adds nothing to the plaintiff's legal title.

Verdict for the plaintiff.